UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DURELL T. CRAIN, <br><br> Plaintiff, <br><br> v. <br><br> LLOYD ARNOLD, <br><br> Defendant. | CAUSE NO. 3:25-CV-380-PPS-JEM |

OPINION AND ORDER

Durell T. Crain, a prisoner without a lawyer, filed a complaint seeking injunctive relief against Lloyd Arnold, the commissioner of the I.D.O.C., in his official capacity. [ECF 1.] Crain alleges here – as he has in other cases before this Court - that there is a plot to murder him and inmates are attempting to carry out this plot by smoking or burning things near him because they know he has asthma. Crain's complaint seeks injunctive relief in the form of a transfer to another facility. He also asks that his new location be concealed for his safety. Finally, he has been restricted from placing calls to his fiancé, and he wants that restriction lifted.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or

malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Crain has already filed one lawsuit in this district seeking similar relief related to the alleged plot to murder him. *Crain v. Reagle*, 3:25-CV-95-PPS-JEM (filed Jan. 29, 2025). In that case, Crain sought an immediate transfer to the Indiana State Prison protective custody unit until arrangements could be made to transfer him to an out of state prison in a state that is not near Indiana. He further asked that only the IDOC central office staff and transporting officers be permitted to know the location where he will be housed. I allowed him to proceed on a single claim against Warden Smiley in his official capacity to obtain permanent injunctive relief to protect him from attacks by other inmates, as required by the Eighth Amendment. [Case No. 3:25-CV-95-PPS-JEM, ECF 8.] I allowed Crain to proceed against the warden because "the warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out." *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). All other claims were taken under advisement for later screening, as required by 28 U.S.C. § 1915A. I ordered briefing on the issue of whether a preliminary injunction should be granted. After briefing, I denied Crain's motion for a preliminary injunction. I found that, even if there is a plot to murder Crain, he hadn't demonstrated a reasonable likelihood of success on the merits of his Eighth Amendment claim because Warden Smiley took reasonable steps to secure his safety by placing him in restrictive housing, in a single man cell, where he is not removed without two or more guards accompanying him.

In that case, Crain argued that I should substitute the Commissioner of the I.D.O.C. for Warden Smiley because Warden Smiley lacks the authority to grant the relief he sought: transfer to I.S.P.'s one man cell protective custody unit pending transfer to an out of state prison not near Indiana. I denied that request because the question before me was whether Crain's placement complied with the Eighth Amendment, and Warden Smiley was best positioned to address the risks associated with Crain's placement. Ultimately, it didn't matter whether the defendant was listed as the warden in his official capacity or the commissioner in his official capacity because Crain didn't demonstrate that preliminary injunctive relief was warranted. The order declining to substitute the commissioner and denying the request for preliminary injunctive relief issued on April 14, 2025.

Thirteen days later, Crain initiated this lawsuit by submitting his complaint seeking essentially the same relief but naming the commissioner as a defendant. Whether the defendant is the warden in his official capacity or the commissioner in his official capacity does not matter. Either way, the claim is "tantamount to a claim against the government entity itself." *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007), *abrogated on other grounds by Kemp v. Fulton County*, 27 F.4th 491, 497 (7th Cir. 2022). The relief available does not change. To the extent Crain seeks transfer or that his location be concealed following transfer (or release on parole), this complaint is a malicious duplicate of the claims being litigated in *Crain v. Reagle*, 3:25-CV-95-PPS-JEM (filed Jan. 29, 2025). *See Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (noting a suit is

"malicious" for purposes of Section 1915A if it is intended to harass the defendant or is otherwise abusive of the judicial process).

To the extent Crain is raising a new claim in this case regarding the ability to place phone calls to his fiancé, his complaint does not state a claim. Prisoners have a First Amendment right to communicate with individuals outside the prison, but it is not an unqualified right. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994). The Court of Appeals for the Seventh Circuit has expressed doubt about whether restrictions to telephone access implicate the First Amendment.

> Although the telephone *can* be used to convey communications that are protected by the First Amendment, that is not its primary use and it is extremely rare for inmates and their callers to use the telephone for this purpose. Not to allow them access to a telephone might be questionable on other grounds, but to suppose that it would infringe the First Amendment would be doctrinaire in the extreme, *United States v. Footman,* 215 F.3d 145, 155 (1st Cir. 2000), though the Ninth Circuit disagrees. *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) (per curiam).

*Arsberry v. Illinois*, 244 F.3d 558, 564–65 (7th Cir. 2001) (emphasis in original). *See also Boriboune v. Litscher*, 91 Fed.Appx. 498, 499 (7th Cir. 2003). The courts that have recognized a First Amendment right to telephone access have held that it may be limited under *Turner v. Safley*, 482 U.S. 78 (1987). *See Lashbrook v. Hyatte*, 758 Fed. Appx. 539, 541 (7th Cir. 2019) (acknowledging that the First Amendment permits reasonable telephone restrictions related to legitimate penological concerns even when the calls at issue are with counsel); *Boriboune,* 91 Fed.Appx. at 499 (citing *Johnson v. California,* 207 F.3d 650, 656 (9th Cir. 2000)). In the context of the First Amendment, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is

4

reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *Kaufman v. McCaughtry*, 419 F.3d 678, 682–83 (7th Cir. 2005).

Here, Crain indicates he was using phone access with his fiancé to have his fiancé contact Deputy Attorney General Emily Huegler when he heard something that made him think he would be moved from a cell where he felt reasonably safe to a cell where he believed his safety would be compromised. He also would call his fiancé and have her contact the facility when the staff didn't respond promptly enough to his requests for breathing treatments that he felt he needed. The phone restriction went into effect around September 23, 2024, and it is unclear when it will be lifted. Assuming without deciding that Crain has a First Amendment right to access the telephone, the restriction is reasonable given his misuse of the ability to communicate with his fiancé by phone to have her repeatedly contact the warden's counsel and facility staff about his concerns. There is a process in place for Crain to bring his concerns to the attention of the prison. That process may be slow and imperfect, but if every inmate bypassed that system to bring the concerns they felt were urgent to the attention of the warden, then the warden would do little other than field phone calls from concerned relatives. Placing a restriction on Crain's ability to contact his fiancé by phone under these circumstances is reasonable. Therefore, Crain has not stated a claim under the First Amendment.

The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend XIV, § 1. However, an inmate is entitled to due process protections only when a prison

5

policy poses an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The restriction at issue here does not amount to an atypical or significant hardship, even considering Crain's unique circumstances and needs. *See Hadley v. Peters*, No. 94–1267, 1995 WL 675990, at *8 (7th Cir. 1995).

Finally, Crain filed a motion asking the court to intervene and order that he be moved to a cell he previously occupied. [ECF 10.] Crain's complaint does not state a claim. Therefore, the motion [ECF 10] will be denied.

This complaint does not state a claim for which relief can be granted. Crain's allegations regarding injunctive relief related to his placement will not be litigated here; it is malicious to do so. However, if after reading this order Crain believes he can amend his complaint to state a claim based on the restrictions placed on his communications with his fiancé, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **<u>Pro Se 14 (INND Rev. 2/20) Prisoner Complaint</u>** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Durell T. Crain until **August 15, 2025**, to file an amended complaint; and

(2) CAUTIONS Durell T. Crain if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on July 15, 2025.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT