UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DURELL T. CRAIN,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>JASON SMILEY, et al.,<br><br>　　　　Defendants. | CAUSE NO. 3:25-CV-380-PPS-JEM |

OPINION AND ORDER

Durell T. Crain, a prisoner without a lawyer, filed a motion to amend his complaint together with a proposed amended complaint. ECF 22; ECF 22-1. At this stage of the proceedings, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). When justice requires it, leave should be freely given. *Id.* "Reasons for finding that leave should not be granted include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (emphasis omitted) (citation omitted). The amendment will not result in undue delay, and the defendants will not be unduly prejudiced by the amendment. Accordingly, I will grant the motion to amend, instruct the clerk to file the amended complaint and will proceed to screen it as I'm required to do.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In screening Crain's earlier complaint, I determined that much of his complaint duplicated his allegations in 3:25-CV-95-PPS-JEM. What's more, I made it clear that "Crain's allegations regarding injunctive relief related to his placement will not be litigated here[.]" ECF 12 at 6. I did, however, invite Crain to amend his complaint if, after reviewing my order, he believed he could state a claim "based on the restrictions placed on his communications with his fiancée[.]" *Id.*

In finding that his earlier complaint did not state a claim based on the restrictions placed on Crain's communications with his fiancée, I found the following:

> Prisoners have a First Amendment right to communicate with individuals outside the prison, but it is not an unqualified right. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994). The Court of Appeals for the Seventh Circuit has expressed doubt about whether restrictions to telephone access implicate the First Amendment.
>
>> Although the telephone *can* be used to convey communications that are protected by the First Amendment, that is not its primary use and it is extremely rare for inmates and their callers to use the telephone for this purpose. Not to allow them access to a telephone might be questionable on other grounds, but to suppose that it would infringe the First Amendment would be doctrinaire in the extreme, *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000), though the Ninth Circuit disagrees. *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) (per curiam).

2

> *Arsberry v. Illinois*, 244 F.3d 558, 564–65 (7th Cir. 2001) (emphasis in original). *See also Boriboune v. Litscher*, 91 Fed.Appx. 498, 499 (7th Cir. 2003). The courts that have recognized a First Amendment right to telephone access have held that it may be limited under *Turner v. Safley*, 482 U.S. 78 (1987). *See Lashbrook v. Hyatte*, 758 Fed. Appx. 539, 541 (7th Cir. 2019) (acknowledging that the First Amendment permits reasonable telephone restrictions related to legitimate penological concerns even when the calls at issue are with counsel); *Boriboune*, 91 Fed.Appx. at 499 (citing *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000)). In the context of the First Amendment, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *Kaufman v. McCaughtry*, 419 F.3d 678, 682–83 (7th Cir. 2005).
>
> Here, Crain indicates he was using phone access with his fiancé to have his fiancé contact Deputy Attorney General Emily Huegler when he heard something that made him think he would be moved from a cell where he felt reasonably safe to a cell where he believed his safety would be compromised. He also would call his fiancé and have her contact the facility when the staff didn't respond promptly enough to his requests for breathing treatments that he felt he needed. The phone restriction went into effect around September 23, 2024, and it is unclear when it will be lifted. Assuming without deciding that Crain has a First Amendment right to access the telephone, the restriction is reasonable given his misuse of the ability to communicate with his fiancé by phone to have her repeatedly contact the warden's counsel and facility staff about his concerns. There is a process in place for Crain to bring his concerns to the attention of the prison. That process may be slow and imperfect, but if every inmate bypassed that system to bring the concerns they felt were urgent to the attention of the warden, then the warden would do little other than field phone calls from concerned relatives. Placing a restriction on Crain's ability to contact his fiancé by phone under these circumstances is reasonable. Therefore, Crain has not stated a claim under the First Amendment.
>
> The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend XIV, § 1. However, an inmate is entitled to due process protections only when a prison policy poses an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The restriction at issue here does not amount to an atypical or significant hardship, even considering Crain's unique circumstances and needs. *See Hadley v. Peters*, No. 94–1267, 1995 WL 675990, at *8 (7th Cir. 1995).

*Id.* at 4-6.

Crain's amended complaint, which he has labeled as an emergency, is yet another shotgun spray; it names eleven defendants: Warden Jason Smiley, Captain Jason Rippe, Sgt. Burk, Anissa Porter-Vaughn, Bradley Burkett, Lt. Davilla, Nurse Bryant, Nurse Jacobs, Nurse Hickman, C.O. Clemonds, and Nurse Ellis. Crain no longer

3

contends that the restriction on communicating with his fiancée, standing alone, violates the First Amendment. Instead, he asserts that he is being retaliated against for filing his lawsuit about the alleged plot to murder him and his alleged need for safety in this court in January 2025. *See Crain v. Reagle et al.*, 3:25-CV-95-PPS-JEM (filed Jan. 29, 2025).

Here is the course of the retaliatory events, according to Crain. It started when unknown individuals in April 2025 began spraying substances into Crain's cell from the outside. These substances allegedly included bug spray, rat poison, dirt, and smoke. When an emergency grievance regarding these substances went unanswered, Crain called his fiancée and asked her to call both the facility and an attorney representing the defendants in Crain's earlier lawsuit to tell them about the substances being introduced into his cell. Crain also called his fiancée each time he requested medical care and did not receive it as promptly as he would have liked. He would ask his fiancée to contact the facility or the medical staff, she would call, and he would be attended to. But in late April, Crain found that his fiancée's name had been removed from his call list.

A correctional officer allegedly told Crain that "Sgt Burk & Captain Rippe conspired with I & I Porter-Vaught & Burkett … to have her removed from [his] phone list so [he] can't call her[.]" [DE 22-1 at 5–6. After the restriction was placed, officers taunted Crain over his inability to contact his fiancée. Crain saw Captain Rippe and complained that CO Clemonds and Sgt. Burk denied him his breathing treatments[1] so

---

[1] Crain's complaint focuses on alleged acts of retaliation, and I do not believe he intended to assert a separate Eighth Amendment medical claim against CO Clemonds or Sgt. Burk for deliberate indifference

4

he needed to call his fiancée to get her help in getting the breathing treatments. Captain Rippe claimed Crain was lying about CO Clemonds and Sgt. Burk, and he also said that, if Crain stopped filing lawsuits and motions, he would be able to breathe and call his fiancée.

Crain indicates he has submitted a request to the appropriate officials about having his fiancée added back to his phone list, but when Crain filed his amended complaint, that had not yet occurred. In an emergency grievance, Crain explained that he needs to be able to call his fiancée because there is no emergency call button in his cell and nearby inmates will not help him.

Sometime in late May, around 3:15 p.m., Crain contends that CO Clemonds denied him a breathing treatment again. In response, Crain placed his arm in the cuff port so that it could not be closed. Sgt. Burk was called. Crain again indicated he needed a breathing treatment because he could not breathe. Sgt. Burk allegedly denied his request and used a Taser on Crain.[2] He was taken to medical after that to be

---

to his serious medical needs. To the extent that Crain may have intended to allege that CO Clemonds and Sgt. Burk violated the Eighth Amendment by refusing to transport him to the medical department for breathing treatments, his allegations are too vague to state a claim. Under the Eighth Amendment, deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (citation omitted). Crain has not included allegations from which it could be plausibly inferred that CO Clemonds or Sgt. Burk were deliberately indifferent to his medical needs.

[2] Crain does not allege that Sgt. Burk used excessive force when he deployed his Taser. Nonethless, to the extent that may have been Crain's intention, his allegations are too vague to state a claim. The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* at 890. It cannot be plausibly inferred that the force Sgt. Burk used was not a good faith effort to maintain order.

5

assessed due to the use of the Taser. Crain asked for a breathing treatment, but Sgt. Burk allegedly said that Crain was lying and didn't need one. As they were leaving, Sgt. Burk allegedly said "I bet you can't call Tasha to save you." *Id.* at 7. He received a breathing treatment around 7:15 that evening, after the shift changed.

Sometime thereafter, Crain asked CO Clemonds for a breathing treatment and CO Clemonds refused to take him for the treatment. Crain had to wait until evening shift to get his breathing treatment. When CO Clemonds again denied him the treatment, he told Crain that if he stopped filing lawsuits and motions, he would be able to call his fiancée for help getting his breathing treatment. On another occasion, CO Clemonds allegedly said "stop filing lawsuits & motions or stop breathing & die, choose one." *Id.* at 8.

At the end of June 2025 or beginning of July 2025, Crain was moved to a dorm where there was more smoke. He went on suicide watch, and he was then assigned a suicide companion who could seek medical help for him if it was needed. Sgt. Burk came to his cell to remove him from suicide watch even though Crain had not met with a mental health worker. Sgt. Burk derisively told Crain to "talk to his fiancée" if he needed someone to talk to. Crain allegedly suffered a mental breakdown after this comment.

Davilla witnessed this breakdown. He used a taser on Crain and returned him to his cell.[3] Crain received a conduct report for resisting. That night, while receiving a

---

[3] To the extent Crain may have intended to assert that Davilla used excessive force against him, Crain's allegations are too vague to state a claim. *See* footnote 2 (explaining the requirements to state a claim for

6

breathing treatment, he was moved back to an observation cell on suicide watch. He met with a mental health worker on Monday and a fan was placed in front of his cell to keep the smoke out. However, other inmates complained about the fan and try to have it removed or turned off.

Crain has tried to send messages to his fiancée, but they stay pending for days and sometimes don't go through at all. When his complaints about his medical care[4] reached Nurse Ellis, she responded with "Fuc* him, it's not like he can call anybody to call on me anymore." *Id.* at 12. Nurse Bryant has claimed that Crain is lying and suggested he call his fiancée. Nurse Jacobs and Nurse Hickman have also allegedly made smart remarks about Crain's fiancée.

To state a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707–08 (7th Cir. 2023) (citation omitted). Filing a lawsuit alleging that defendants failed to protect Crain from attacks by other inmates is protected First Amendment activity, and these events happened shortly after the defendants would have learned about the lawsuit, which

---

excessive force). It cannot be plausibly inferred that the force Lt. Davilla used was not a good faith effort to maintain order.

[4] Crain asserts that he is having pain in "his organs" since the substances were allegedly sent into his cell. [DE 22-1 at 12.] He claims that he has given health care requests to Nurse Ellis, Nurse Jacobs, Nurse Bryant, and Nurse Hickman, and they have refused to provide him with medical care. These claims duplicate those made in *Crain v. Arnold et al.*, 3:25-CV-827-PPS-APR (filed Sept. 30, 2025) and will not be addressed here.

7

allows an inference of causation. *See Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005) (right to access the courts a protected activity); *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (suspicious timing). So, in order to state a claim, Crain needs to plausibly allege a deprivation that would likely deter future First Amendment activity.

Removing Crain's fiancée from his call list could deter a reasonable person in Crain's position from engaging in future First Amendment activity. Crain alleges that Sgt. Burk, Captain Rippe, I & I Porter-Vaught, and Burkett all played a role in having her removed from the phone list. Therefore, he may proceed against them on First Amendment retaliation claims.

However, Crain may not proceed against Nurse Ellis, Nurse Bryant, Nurse Jacobs, and Nurse Hickman on a retaliation claim because he has not alleged that they were responsible for the decision to restrict Crain's ability to call his fiancée. He only alleges that they made rude comments about his inability to contact her. While offensive, mere verbal harassment does not state a claim. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (rude language or verbal harassment by prison staff "while unprofessional and deplorable, does not violate the Constitution."), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020).

Crain also alleges that CO Clemonds and Sgt. Burk retaliated against him for filing lawsuits by refusing to transport him to the medical department to receive breathing treatments, and that Captain Rippe claimed Crain was lying about needing a breathing treatment to persuade medical staff to decline Crain's request for a treatment. Preventing Crain from receiving breathing treatments could deter a person of

8

reasonable firmness from engaging in future First Amendment activity. Therefore, Crain may also proceed against CO Clemonds and Sgt. Burk for allegedly refusing to take him to the medical department in retaliation for filing lawsuits. And he may proceed against Captain Rippe for representing to medical staff that Crain was lying about his need for a breathing treatment in retaliation for filing lawsuits.

This leaves only one defendant: Warden Smiley. Crain does not allege that Warden Smiley was personally involved in the decision to remove Crain's fiancée from his call list or any decision not to transport Crain for breathing treatments. However, Crain does seek injunctive relief in the form of an order that his fiancée be added back to his contact list so that he can place calls to her. Crain will be allowed to proceed against Warden Smiley in his official capacity to lift the restrictions prohibiting Crain from calling his fiancée. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out.").

Crain seeks other injunctive relief too, including an order that a fan be kept in front of his cell, an order allowing Crain to possess a fan that is stored with his property, and an open-ended order that he receive further medical examinations or testing. These are either trifles or too ambiguous to grant relief, and in any event, Crain is not proceeding in this case on claims based on either the alleged plot to murder him (but he is elsewhere, *see* 3:25-CV-95-PPS-JEM) or inadequate medical care (*see* 3:25-CV-872-PPS-APR). Any relief for these indignities is best left to those other cases.

For these reasons, the court:

(1) GRANTS the motion to amend the complaint (ECF 22);

(2) DIRECTS the Clerk to file Durell T. Crain's amended complaint (ECF 22-1);

(3) GRANTS Durell T. Crain leave to proceed against Captain Jason Rippe, Sgt. Burk, Anissa Porter-Vaughn, and Bradley Burkett in their individual capacities for compensatory and punitive damages for retaliating against Crain by imposing restrictions preventing him from contacting his fiancée by phone in retaliation for filing a lawsuit in January 2025, in violation of the First Amendment;

(4) GRANTS Durell T. Crain leave to proceed against CO Clemonds and Sgt. Burk in their individual capacities for compensatory and punitive damages for retaliating against Crain by refusing to transport him to receive breathing treatments ordered by Crain's health care providers, in retaliation for filing a lawsuit in January 2025, in violation of the First Amendment;

(5) GRANTS Durell T. Crain leave to proceed against Captain Jason Rippe in his individual capacity for compensatory and punitive damages for retaliating against Crain by representing to medical staff that Crain was lying about his need for a breathing treatment in retaliation for filing a lawsuit in January 2025, in violation of the First Amendment;

(6) GRANTS Durell T. Crain leave to proceed against Warden Smiley in his official capacity for injunctive relief to lift restrictions prohibiting Crain from calling his fiancée resulting from the alleged retaliation by Captain Jason Rippe, Sgt. Burk, Anissa Porter-Vaughn, and Bradley Burkett, to the extent required by the First Amendment;

(7) DISMISSES all other claims;

(8) DISMISSES Davilla, Nurse Bryant, Nurse Jacobs, Nurse Ellis, and Nurse Hickman;

(9) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Captain Jason Rippe, Sgt. Burk, Anissa Porter-Vaughn, Bradley Burkett, CO Clemonds, and Warden Smiley at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 22-1);

(10) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(11) ORDERS, under 42 U.S.C. § 1997e(g)(2), Captain Jason Rippe, Sgt. Burk, Anissa Porter-Vaughn, and Bradley Burkett, CO Clemonds, and Warden Smiley to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on December 8, 2025.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT